UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| REINALDO MARTINEZ,, a/k/a Silo Rosario, PETITIONER, vs. ALBERTO GONZALES, ATTORNEY GENERAL, ET AL., RESPONDENT | Case No.: C. A. NO. 05-112S<br>PETITIONER'S MEMORANDUM OF LAW |

In the instant matter the petitioner challenges the right of the government to detain him to answer to deportation and or removal proceedings as he is an American citizen. The court is treating the petitioner as having filed a petition for Habeas Corpus pursuant to 28 U.S.C. 2241. The question which is the subject of this memorandum is whether the Real Id Act of 2005, Publ. L. NO. 109-13, Div. B, 119 Stat. 231, 302, jurisdiction striping provisions effectively removes the instant matter from this court's jurisdiction. The answer to that question is decidedly it does not. For Congress to remove the availability of recourse to the court's for issuance of a Writ of Habeas Corpus would violate the provisions of United States Constitution, Article I §9. The Supreme Court has held that the Constitution requires that any substitute remedy for habeas corpus be "neither inadequate nor ineffective to test the legality of a person's detention. Swain v. Pressley 430 U.S. 372, *381, 97 S.Ct. 1224, **1230 (U.S.Dist.Col., 1977).

Historically, in England, habeas corpus provided an effective remedy against unlawful detention by guaranteeing the basic protections of due process which date to the Magna Carta. By the time of the celebrated Habeas Corpus Act of 1679, the writ provided that those arrested in England for suspected wrongdoing, could not be imprisoned indefinitely but had to be charged and tried at common law. Unless Parliament suspended the writ, the protections of habeas corpus remained in place. In sum, habeas corpus traditionally ensured that individuals in England could not be confined on mere executive say-so. The Framers of our own Constitution, steeped in the writings of preeminent common law jurists like Coke and Blackstone, understood the writ's central role in safeguarding individual liberty. They foresaw the potential need for emergency detention, but, keenly aware of its dangers, restricted it to the narrow circumstances set forth in the Suspension Clause and gave Congress the exclusive authority to suspend the writ. Faced with real threats to their new republic's survival, including the War of 1812, the only foreign war ever fought principally on U.S. soil, the Founding generation never sacrificed the writ's core protections or abandoned the rule of law. There is no need here to take the position the government appears to assert relative to the jurisdiction stripping provisions of the REAL ID act.

A. In Colonial America under the United States Constitution, Habeas Corpus Provided the Ultimate Safeguard against Indefinite Detention.

The writ's history in colonial America and during the Founding era demonstrates that habeas corpus was understood as providing the same elementary check against unlawful executive detention as it had in England.

Since the early colonial period, the writ has held a uniquely elevated place in Americanlaw.[1] The common law writ operated in all thirteen British colonies that rebelled in 1776, and in practice judges often employed the remedial protections of the 1679 Habeas Corpus Act "as a matter of course."[2]

It is against these historical roots of the "Great Writ" that the court is now called on to review the impact of the Real ID Act. The Real ID Act in section 106 significantly expands the current restrictions on judicial review contained in the Immigration and Nationality Act (INA). It eliminates statutory and non-statutory habeas corpus review wherever judicial review is eliminated throughout the INA. It excludes from the aforementioned bar on judicial review "constitutional claims or questions of law," but only when such review is sought pursuant to a petition for review before the U.S. Court of Appeals. It makes petitions for review before a U.S. Court of Appeals the sole and exclusive means for judicial review of claims under the Convention Against Torture (CAT) and it mandates transfer to the various U.S. Courts of Appeals all cases challenging final orders of removal that are pending in the Federal District Court on the date of enactment. It is this provision that effectively eliminates the critical role of habeas corpus as a safeguard. The act would now limit to one petition for review of a detention or removal order to the circuit court rather than allowing the continuation of a Habeas petition to the U.S. District Court. As such the act is the first suspension of the Great Writ since the Civil War. In its effort to streamline

---

[1] E.g., Francis Paschal, "The Constitution and Habeas Corpus,"1970 Duke L.J. 605, 608 ("abundant evidence of an early and persisting attachment" to habeas corpus in colonial America); Milton Cantor,"The Writ of Habeas Corpus: Early American Origins and Development,"in Freedom and Reform: Essays in Honor of Henry Steele Commager55, 74 (H. Hyman & L. Levy eds. 1967) ("Habeas corpus was the only common-law process explicitly written into the Constitution, which is the most complete measure of its reception by the colonists and the high regard in which it was held.").

[2] Zechariah Chafee, Jr., "The Most Important Right in theConstitution," 32 B.U.L. Rev. 143, 146 (1952).

immigration review Congress eliminated habeas review, the once saving aspect of prior efforts to revise the immigration law in 1996. The Supreme Court reviewed the 1996 law's restrictions on judicial review in 2001, and decided that "serious constitutional questions" would be presented by a law that would strip the federal courts of power to review unlawful government actions. INS v. St. Cyr, 533 U.S. 289, 314 (2001). The Supreme Court avoided these questions by ruling that the law's limitations on the typical form of judicial review in immigration cases - a "petition for review," filed directly in a federal appellate court - did not bar review by habeas corpus. *Id.* The Supreme Court also decided that, where a writ of habeas corpus is sought to review the conduct of immigration officials, it should be filed in the district court - the normal procedure in habeas cases. *Id.* at 313-14, nn. 37 & 38.

It appears the reasons underlying the current changes on top of those in the 1996 laws, is because the same as interpreted in *St. Cyr*, have resulted in a situation in which judicial review in most immigration cases goes straight to the federal appellate courts - whose decisions are final unless the Supreme Court agrees to review them - while some immigrants may obtain review by a writ of habeas corpus in the district court. As a result, they argue, habeas cases provide review by two courts - "more" review - because an adverse decision by the district court on a habeas petition may be appealed as of right to a federal appeals court.

Instead, the legislation provides a plainly *inadequate* substitute. The legislation's substitute for habeas corpus review in the district court is inadequate because it goes beyond directing which court may hear a claim. While it preserves the specific kind of claims directly at issue in *St. Cyr* - constitutional questions and pure questions of law, involving the

interpretation of federal statutes, that are otherwise barred by the 1996 laws' judicial review restrictions - it bars other claims that have historically been available in immigration cases on habeas corpus.

The Act not only forecloses habeas corpus review in those cases where a "petition for review" is barred under section 242(a)(2) of the INA - it goes much further by redefining "judicial review" and "jurisdiction to review" *throughout* the Immigration and Nationality Act to include review by habeas corpus. This is a radical departure in immigration law, because it changes the longstanding, historical meaning of "jurisdiction to review" and "judicial review" - "terms of art" that have been long interpreted in immigration matters as distinct from review by writ of habeas corpus. See *St. Cyr* at 312 n. 35. This section would redefine the meaning of these terms to explicitly forbid access to the "Great Writ" for all claims where "judicial review" or "jurisdiction to review" is barred, dramatically altering at least thirteen separate provisions of the Immigration Act that affect agricultural workers, asylum petitioners, non-immigrants and others. In these cases, habeas review must be available as a safety valve. The Constitution demands court review for all actions that affect the liberty of persons detained by the government.

The legislation explicitly bars the federal courthouse doors to any alternative appeal through the "Great Writ" of liberty.[3] In so doing, the bill violates the Constitution, which provides that "the Privilege of the Writ of Habeas Corpus shall not be suspended" except in cases of "Rebellion or

---

[3] Amended INA §§242(a)(2)(A), (B) and (C); new §242(a)(4); new §242(A(5); amended §242(b)(9); and amended § 242(g).

Invasion." *U.S. Const.* art. I § 9. The Supreme Court has held that the Constitution requires any substitute remedy for habeas corpus to be "neither inadequate nor ineffective to test the legality of a person's detention." See *Pressley* at 381.

Here as noted above it is not at all clear the act on it own terms applies to the petitioner as he claims citizenship, asks the court to recognize that citizenship and asks that he be released from unlawful detention by ICE. Certainly as noted at the hearing hereon the Administrative Office of the United States Courts[4] specifically recognized the act does not apply to detention cases. The Supreme Court has stated "the writ of habeas corpus has always been available to review the legality of executive detention. INS v. St. Cyr 533 U.S> 289, 364-65 (2001) Eliminating judicial oversight of executive detention would be a dramatic departure from this historical role of the courts. This is especially true considering that post-final order review is not a substitute for reviw of the process for pre-removal detention. Moreover Demore v. Kim, 538 U.S. 510 (2003) and like cases affirming judicial review over detention remain valid. Legislative history also indicates that Congress intended to retain habeas jurisdiction over detention challenges. In testimony to the Senate about the REAL ID ACT THE JUSTICE Department made clear that "the bill would not preclude habeas review over challenges to detention; the bill would eliminate habeas review only over challenges to a removal order." Statement of Jonathan Cohn, Deputy Assistant Attorney General, Civil Division before the Subcommittee on Immigration, Border Security and Citizenship, April 14, 2005 In addition the conference report to the act states the limitations on review do not extend

---

[4] Letter dated 5-25-2005

to challenges to detention. [5] See also Enwonwu v. Chertoff et al CA 05-10511 -Wgy USDC Dist of Mass, Chief Judge Young Page 102 (May obtained from court's website).

Manifestly then the case for habeas review is properly before the court and the Court ought to resolve the matter on its merits.

Dated this 11th day of August, 2005

ONE FINANCIAL PLAZA
SUITE 1500
PROVIDENCE, RI 02903
401-861-9042
FAX:401-861-0330
GEORGE J. WEST, ESQ.

Certificate

I hereby certify that I mailed a copy of the foregoing to Robin Feder at the U.S. Attorney's Office this 11 day of August, 2005.

[5] Moreover, section 106 would not preclude habeas review over challenges to detention that are independent of challenges to removal orders. Instead, the bill would eliminate habeas review only over challenges to removal orders.

151 Cong. Rec. H2813-01, *H2873